ADELINE HAVENS, adm'x and David Brundage, adm'r, &c.
vs. THE ERIE RAILWAY COMPANY.

Upon a bill of exceptions the court can only review the legal decisions made at
the circuit, and those only so far as they were duly excepted to.

It is not the duty of a judge, at the circuit, in response to requests, to go over
again the very ground or questions covered by the charge as given; and it is
not the right of counsel, when the charge is ended, to seek to get a repeti-
tion of a leading idea already fairly expressed, by a request to charge upon
it anew, or in some little different phraseology, so as to get in that shape a
virtual re-argument of the facts before the jury. *Per* E. D. SMITH, J.

In an action against a railroad company, by administrators, to recover damages
for the death of their intestate, caused by the alleged wrongful act, neglect,
&c. of the defendant, the judge charged the jury that persons approaching
a railroad in plain sight are bound to look and see if any train is coming;
that if they look up and down the road as men of ordinary prudence would
do in traveling near a railroad, and are not negligent, the plaintiffs, in an
action against the railroad company, for damages, are entitled to recover,
if the persons in charge of the railroad were negligent. *Held* that this was
a correct statement of the rule in respect to the conduct of a plaintiff, in
such cases.

It is not a question of law how far a man should look, in such a case, but he
must use his eyes and his ears, in view of the circumstances, as men of ordi-
nary prudence would do in like cases. And this rule is one for the jury to
apply.

It is not error for a judge to refuse to charge that "it mattered not whether
the bell was rung the distance of eighty rods, if it was rung far enough from
the crossing to warn passers by." The statute having provided that this—
"far enough to warn passers by"—shall be eighty rods, the jury have no
right to change the rule as thus fixed.

THE questions presented in this case arose upon a case
and exceptions ordered to be heard at the general term
in the first instance. The action was tried before Justice
Johnson and a jury at the Steuben circuit, in November,
1867. The action was brought under the statute, to
recover of the defendant damages for causing the death of
James Havens, the plaintiffs' intestate, which occurred in
November, 1867, while riding in a wagon with one Gorton,
and was occasioned by coming in contact with one of the
defendants' eastward bound trains, on what is known as
Bennett's Crossing, in the town of Corning, county of

Steuben.   Two questions arose, and were litigated on the trial; one was whether the deceased himself, or Gorton, who was driving the wagon, was negligent in the exercise of requisite care in approaching the crossing.   Upon this point it was proved that the deceased, with Gorton, met parties on the highway twelve rods from the crossing, and although Gorton testified that between the place of that meeting and four or five rods from it towards the crossing he turned around, looked for a train once, and but once; saw none; that he gave attention to the signals the company were required to give, and he heard none.

Upon the question of care which the deceased was bound to exercise, the judge submitted to the jury to find whether, if Gorton and the deceased after going within eight, ten or twelve rods of the crossing looked up the road and saw no train, and heard none, it would be ordinary prudence to go on the track, looking down the road for a train coming in that direction, and charged that men approaching a railroad in plain sight are bound to look and see if a train is crossing; but at the conclusion of his charge, at the request of the plaintiffs' counsel, he charged the jury that the deceased was not bound to stop and look up and down the road, unless there were signals given; and if they heard no signals they would have the right to think there was no train within eighty rods; and refused to comply with a request then made by the defendants' counsel to charge the jury that if the deceased might, at any point within ten rods of the crossing, have easily seen the approaching train, nearly a mile off, he was bound to survey the space, or in other words to look up the road, and if by omitting so to do he lost his life, the plaintiff could not recover; and to his refusal the counsel for the defendants excepted.   The other question litigated was whether the defendants were negligent in omitting to cause the bell upon their locomotive to be rung as the train approached the crossing.   Upon this question there was

a conflict in evidence. One of the defendants' witnesses testified that it rung thirty rods from the crossing. The map shows a ringing post to be 412 feet from the crossing. The judge, in his charge, stated to the jury that the statute required the defendants to ring the bell *continuously*, from a point eighty rods from the crossing, and then charged them if the defendants rung it *the whole distance* the defendants were not guilty of negligence, and refused to charge that it mattered not whether the bell was wrung the distance of eighty rods, if it was rung far enough from the crossing to warn passers by ; and to his refusal so to charge the counsel for the defendants excepted. The judge in the course of his charge to the jury warned them not to " overlook the fact that men commonly pay some attention to their own safety, to their own lives; and there is nothing in the case to show that these men intended to commit suicide, or that Gorton intended to have Havens killed." In referring to the care travellers were bound to exercise in approaching a train, he said, "they cannot look both ways at once."

The jury rendered a verdict for the plaintiffs for $1300.

*Brown & Graves,* for the plaintiffs. I. The evidence upon the trial was abundantly sufficient to support the verdict. It appeared, 1. That the defendants' train, which caused the death, approached the crossing out of its regular and advertised time and was going at an unusual and very high rate of speed. 2. No signal of any kind was given to warn the plaintiff and Gorton, (who was driving,) of the approaching train. 3. Havens was properly and rightfully traveling in the public highway and without any fault or negligence on his part or on the part of Gorton was killed by being struck by the defendants' locomotive. Gorton looked up the railroad to see if a train was approaching and saw none. He listened and heard no sound. Then looking down the railroad to see if a train was coming

from that direction and seeing none, passed upon the crossing. 4. The deceased left a widow and five children, for whom he provided. The evidence presented merely questions of fact upon which the finding of the jury is conclusive. (14 *N. Y. Rep.* 310. 13 *id.* 533. 36 *How. Pr.* 84.)

II. The offer of the defendants' counsel to prove, by the reports made to Elmira, and by the dispatches at that place, that the reports from Corning showed that the train left that place on time, was properly disposed of by the court. 1. The evidence was merely hearsay evidence, and consequently inadmissible. 2. The term hearsay is used with reference to that which is written, as well as to that which is spoken. 3. This testimony was offered not merely to prove whether such things were written or spoken, but to show that what was telegraphed was true. 4. If the evidence had been received it would have shown no other fact than that the dispatch was received at Elmira. 5. It was concerning a matter not wholly within the knowledge of the witness, but depending upon the truth or falsity of what others had reported. 6. In its legal sense, hearsay evidence denotes that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests also, in part, on the veracity and competency of some other person. As thus described it is uniformly held incompetent to establish any specific fact which in its nature is susceptible of being proved by witnesses who can speak from their own knowledge. (1 *Greenleaf's Ev. p.* 128, § 99. 1 *Phil. Ev.* 185. *Penfield* v. *Carpender*, 13 *John.* 350. *Irvine* v. *Cook*, 15 *id.* 239. *People* v. *Parish*, 4 *Denio*, 153. *Phillips* v. *Thompson*, 1 *John. Ch.* 131.) 4. In this case the defendants offered to show by the receiver of the dispatch at Elmira, the truth of a fact which may have gone through a dozen hands before he received it, and the truth of which depended upon the truth and veracity of, 1st. The person or persons who reported it to the operator at Corning. 2d. The person who telegraphed

it to the witness at Elmira or to the office in which the witness was engaged. Such evidence is clearly hearsay and incompetent. (*See cases and authorities last above cited ; also Alexander* v. *Mahon,* 11 *John.* 185; *Bristol* v. *Dann,* 12 *Wend.* 142; *Woodward* v. *Paine,* 15 *John.* 493. The offer of the defendants' counsel to show that the report was received at Elmira immediately upon the departure of the train from Corning, and before the accident, is liable to the same objections, and was properly disposed of by the court. (*See authorities last cited.*)

III. The request of the defendants' counsel, for the court to charge the jury, "That if the deceased might at any point, within ten rods of the crossing, have easily seen the approaching train nearly a mile off, he was bound to survey the space, or in other words, to look up the road, and if by omitting so to do he lost his life, the plaintiff cannot recover," was properly denied by the court, and the exception thereto was not well taken. 1. The court had already distinctly charged that " in order to entitle the plaintiffs to recover, they must go further " (than showing negligence of the defendants) " and show that the accident occurred without any fault or negligence on the part of the deceased or of Gorton who was with him and driving, which contributed to the injury." 2. The court had no right to charge upon the hypothesis of the counsel which assumes that the train might have been seen for nearly a mile off, at any point within ten rods from the crossing, which assumption is plainly contradicted by the evidence. It also assumes that the deceased and Gorton omitted to look up the road previous to crossing the track, which assumption is contradicted by the proof, and the evidence that they looked and listened is in no way contradicted. 3. The question of negligence on the part of the deceased, and of Gorton, was a question for the jury, which they were to determine in view of all the facts and circumstances of the case, and the court could

not in justice limit the plaintiffs' right to recover by any single act or omission. 4. And never is the question of negligence taken from the jury and decided by the court when there is any conflict of testimony. Nor unless there is a plain and clear case of undisputed negligence on the part of the injured person. (36 *N. Y. Rep.* 132. 35 *id.* 10. 26 *How.* 177. 23 *id.* 168. 13 *N. Y. Rep.* 533. 36 *How.* 84. 2 *Stark. Ev.* 973. 30 *How.* 219. 40 *Barb.* 193.) 5. They were not bound to look up the road, (although it appears that Gorton, who was driving did,) if no signals were given, but had the right to assume that no train was approaching within eighty rods, without, as a matter of law, the imputation of negligence. (*Ernst* v. *Hudson River Railroad,* 35 *N. Y. Rep.* 9, *and cases there cited.*) 6. The court charged that a man approaching a railroad in plain sight, is bound to look and listen, &c. and if he does not he cannot recover.

IV. The court properly refused to charge the jury "that if the bell was rung as the defendants' engineer and fireman swear it was, the plaintiff cannot recover," and the exception to said refusal was not well taken. 1. The court had fully and distinctly charged that "if they were running upon their ordinary speed and rung the bell continuously for this whole distance, (80 rods,) you must say that they were guilty of no negligence, and you would be bound to find a verdict in favor of the defendants." 2. Again, the court charged that "If they were running at the ordinary rate of speed, and gave the signals prescribed by law, they were not guilty of any wrongful act or of any negligence." The engineer and fireman testified that they were going at ordinary speed, and that the bell was rung continuously eighty rods, &c. 3. Therefore, the court having already charged in accordance with the counsel's request, very properly refused to again repeat the charge. (35 *N. Y. Rep.* 82.) 4. The question of the defendants' negligence and consequent liability did not

alone depend upon the want of signals, but was to be arrived at by all the acts of the defendants and all the circumstances of the case; all of which the jury were to consider in making up their verdict, and the court had no right in justice to the plaintiffs to limit them to the single question of whether the bell was rung or not.

V. The further request of the defendants' counsel to charge: "That if the plaintiff can recover, the damages, under the proof, can only be nominal," was properly disposed of by the court, and the exception thereto was not well taken. 1. The evidence showed that the deceased left a widow and five children for whom he provided. 2. No proof of damages resulting to the plaintiff or next of kin is necessary to sustain an action brought under the statute by the administrators of the deceased for injuries to the person. (14 *N. Y. Rep.* 310. 22 *id.* 355. 29 *Barb.* 234. 32 *id.* 25.) 3. The statute provides for the damages, and how they shall be given, as well as limits the amounts. (*Gen. Stat. vol.* 4. *part* 2, *chap.* 10, § 2.)

VI. The written request of the defendants' counsel to the court, to charge: "That it matters not whether the bell was rung the distance of eighty rods, if it was rung far enough from the crossing to warn passers by," was properly disposed of by the court, and the exception thereto by the defendants' counsel was not well taken. 1. The evidence raised no question as to whether the bell was rung a part of the distance required by the statute or not. The plaintiffs' witnesses testified that the bell was not rung at all within eighty rods of the crossing. On the other hand, all of the defendants' witnesses, who testified upon that point, say that the bell rung continuously the whole distance of eighty rods before they reached the crossing. 2. The statute defines the duty of the defendants in this respect, and the court properly charged not only in accordance with that law, but also in accordance with the evidence presented in the case. 3. The court had already charged

Havens *v.* Erie Railway Company.

the substance of that request. 4. The statute having fixed and prescribed the duty of the defendant, the court had no right to ignore it and prescribe in this particular case a different rule, or lessen that duty. 5. If the defendants run their train in violation of a plain provision of the statute, they should not ask the court to disregard the law to shield them from the consequences of their omission or neglect. 6. The legislature deemed it necessary for the safety of the wayfarer for the bell to be rung continuously at least eighty rods, and so fixed the duty.

*H. Gray,* for the defendants. I. The court erred in refusing to charge the jury that if the deceased might, at any point within ten rods of the crossing, have easily seen the approaching train nearly a mile off, he was bound to survey the space, or in other words, look up the road; and if by omitting to do so he lost his life, the plaintiffs could not recover. If the charge of the judge had been left, as it obviously would have been had not the plaintiffs' counsel made a request with which he complied, no ground of complaint would have existed against that portion of it pertaining to the plaintiffs' duty to look for the approaching train; but as it is, his refusal to charge as requested by the defendants' counsel, interpreted by the light of what he had previously charged at the request of the plaintiffs' counsel, amounts to this: That although the statement of Gorton, that he turned half way round and looked up the track after he had passed five or six rods from the persons he met, was, as the defendant insisted, untrue; nevertheless, if at the place specified by him, or at any place in that vicinity, his omission to look at what he would have plainly seen, cost him his life, it did not, in judgment of law, establish his negligence, unless signals were given, is manifest error. (*Spencer* v. *The U. and S. Railroad,* 5 *Barb.* 337. *Brooks* v. *Buf. and N. F. Railroad,* 25 *id.* 600, 604. The question now under consideration was first

considered in the Court of Appeals in *Steves* v. *The O. and S. Railroad,* (18 *N. Y. Rep.* 422.) There the injured party was traveling in plain sight of the approaching train, with his coat turned up around his ears, with abundant opportunity to see and avoid it, if he would but look. Some evidence was given tending to prove that the bell was not rung. Three of the judges, Denio, Selden and Pratt, were of the opinion, "That the object of the statute, requiring the ringing of the bell or the sounding of the whistle, was to put persons negligently approaching crossings on their guard; and that the question whether the negligence of the plaintiff was such that if the proper signals had been given, he would still have been injured, was one which should have been submitted to the jury." But in this they were overruled; the majority of the court holding that omitting to ring the bell or sound the whistle, rendered the defendant liable to the penalty prescribed by law, and that notwithstanding it may not have been rung, a failure to exercise the sense of sight, which would surely have avoided the catastrophe, was legal negligence. It is submitted, therefore, that the issue presented by the dissenting judges, and decided by the court, is decisive of the question now under consideration. It has not only not been overruled, but the principle established by it has been affirmed in subsequent cases. (*Wilds* v. *The Hudson River Railroad,* 24 *N. Y. Rep.* 430. *Same* v. *Same,* 29 *id.* 315, 327, 328.) A struggle has, nevertheless, been going on in the Court of Appeals since Judge Porter, who was counsel for the plaintiff in the cases of *Steves* v. *The Utica and Schenectady Railroad,* (18 *N. Y. Rep.* 422,) and *Wilds* v. *The Hudson River Railroad,* (29 *id.* 327,) became a judge of that court, in which efforts have been made to disturb the principle supposed to be settled by the cases referred to. In *Beisiegel* v. *The New York Central Railroad,* (34 *N. Y. Rep.* 622,) Judge Porter, at page 633, held that: "The omission of the customary signals was an assurance by the

Havens *v.* Erie 'Railway Company.

company to the plaintiff, that no engine was approaching within a quarter of a mile, on either side of the crossing; he was not bound to look out for danger, when assured by the company that the crossing was safe." But in the same case, at page 625, Judge Morgan held that: "If the track had been clear, so that the plaintiff could have seen th approaching train, then, doubtless, it would be negligence in him not to have seen it. So much must be conceded as settled by the adjudications in this state." In *Ernst* v. *Hudson River Railroad*, subsequently reported, (*35 N. Y. Rep.* 9,) Judge Porter had held the same views expressed by him in Besiegel's case, but Judge Hunt, at page 47, held that Ernst, as far as he could see the railroad, "was bound to survey the distance," intending, as he said, to observe the principles laid down in *Wilds* and *Steves*," theretofore cited. Thus it will be seen that the opinion expressed by Judge Porter was, as he said, (*p.* 36,) referring, doubtless, to the opinion of Judge Denio in the Wilds' case, but "the *dictum* of an accomplished and able jurist," which has not attained the strength of authority. The same case was afterwards before the Court of Appeals, (32 *How. Pr.* 64,) and Judge Woodruff, who delivered what seems to be the prevailing opinion in the case, held that "a traveler in approaching a railroad, is bound to use his eyes and his ears, so far as there is opportunity, and that negligence in giving signals, or in omitting precautions of any kind, will not excuse his omission to be diligent in such use of his own means of avoiding danger." This, it seems, ought to quiet all doubts upon a question that was supposed to be settled from the time it first arose in this state until Beseigel's case came before the court; and in that case the opinion of the learned judge, so far as it bears upon the question now under consideration, was, in the opinion of his associates, regarded a mere *obiter*.

II. The judge erred in refusing to charge the jury "that

it mattered not whether the bell was rung the distance of eighty rods, if it was rung far enough from the crossing to warn passers by.

III. The warning of the judge "not to overlook the fact, that men commonly pay some attention to their own safety; to their own lives; and that there was nothing in the case to show that these men intended to commit suicide; or that Gorton intended to have Havens killed," as well as the expression in allusion to Gorton and Havens, "they cannot look both ways at once," was, under the circumstances, uncalled for and calculated to mislead the jury. It is believed not to be within the experience of any judge, that a railroad corporation in case of collision of vehicles, ever in an even case, had the verdict of a jury in its favor; and where the case is as two to one and even much stronger in favor of such a corporation, no case occurs to the defendants' counsel, of a verdict in favor of the corporation, unless the judge presiding was careful in balancing the scales of justice, so far as he was able to cast out of the one side the sympathy and prejudice that inclined the scale against the corporation. So apparent and weighty is the influence against such a corporation, and the sympathy in favor of an individual, that judges of large experience and ability have assigned it as a reason for taking cases, unless entirely clear, from the consideration of a jury. (*Haring* v. *N. Y. and Erie R. R.* 13 *Barb.* 9, 16. *Suydam* v. *The Grand street and Newton R. R. Co.*, 17 *Abb.* 304.) "Every person who has had any experience in courts of justice knows very well that a case of this sort against a railroad company could only be submitted to a jury with one result," say the court in *Toomey* v. *The London, Brighton and South Coast Railway Company*, (91 *Eng. Com. Law*, 146.) The warning given by the judge, "not to overlook the fact that there was nothing to show that these men intended to commit suicide, or that Gorton intended to have Havens killed," was, in any aspect of the

case a strong intimation against the defense, without any similar remark or intimation against the plaintiffs to balance it; and the remark that Gorton and Havens could not look both ways at once was uncalled for. There is nothing in the case that will justify the inference that a contrary view was urged at the trial. The learned judge was the " unbiased adviser of superior knowledge and experience, and consequently entitled to great credit;" and hence the defendants complain of what is deemed an intimation by the court prejudicial to their rights, thrown into the scale already borne down by " compassion," sympathy, and perhaps prejudice against a gigantic corporation, and for nothing bearing upon the merits of the case.

*By the Court,* E. DARWIN SMITH J. This case comes here upon exceptions taken at the circuit and ordered to be heard at the general term in the first instance. It is, therefore, presented to us as a pure bill of exceptions, and we can only review the legal decisions made at the circuit, and those only so far as they were duly excepted to. The first exception taken upon the argument was taken to the refusal of the judge to charge as requested in these words : " That if the deceased might, at any point within ten rods of the crossing, have easily seen the approaching train, nearly a mile off, he was bound to survey the space, or in other words to look up the road, and if, by omitting so to do, he lost his life, the plaintiffs cannot recover." I do not see why the request did not, in substance, ask the judge to state the law correctly upon the point presented. But it seems to me that it virtually did nothing more than ask the judge to repeat what he had already, in substance, said to the jury. He had just said, in his charge to the jury, " That if you shall say upon the evidence that, after going within eight, ten or twelve rods, they looked up and saw no train and heard none, you are to say whether it be ordinary prudence for them to go on the track, looking down

the road for a train coming in that direction. Was the company in fault in the first instance, and if so were these men without fault? Did they look and did they listen to see if the train was coming? Men approaching a railroad in plain sight are bound to look and see if any train is coming. If they look up and down the road, as men of ordinary prudence would do in traveling near a railroad, and were not negligent, the plaintiffs are entitled to recover if the persons in charge of the railroad were negligent." This part of the charge states the rule in respect to the conduct of a plaintiff in such cases correctly, and covers substantially the very proposition presented in the request to charge. It is not the duty of a judge at the circuit, in response to requests, to go over again the very ground or questions covered by the charge as given ; and it is not the right of counsel when the charge is ended to seek to get a repetition of a leading idea already fairly expressed, by a request to charge upon it anew, or in some little different phraseology, so as to get in that shape a virtual re-argument of the facts before the jury. The charge fairly stated the duty of a person approaching a railroad crossing to look up and down the road as men of ordinary prudence would do, in traveling near a railroad. It is not a question of law how far a man should look, but he must use his eyes and his ears, in view of the circumstances, as men of ordinary prudence would do in like cases. And this rule is one for the jury to apply, and it is not the duty of a circuit judge to refine upon a proposition of law, once fairly stated, and divide it and subdivide it to meet every varying view of the facts which may be taken by counsel. I do not think, if the judge had responded to this request as asked, he would, in effect, have stated any new, different or other principle of law than such as he had already well stated to the jury on the subject. This exception, therefore, I think, is not well taken. The same view applies to the next exception. The judge was asked

Havens *v.* Erie Railway Company.

to charge, " That if the bell was rung, as the defendants' engineer and fireman swear it was, the plaintiff cannot recover." The judge had, · in substance, so charged. The judge had expressly said to the jury that if the train was running upon its ordinary time, if the engineer and fireman gave the signals required by law, they were not guilty of any wrongful act or negligence. The same remark in regard to the signals was repeated in different forms several times, in the course of the charge, and there was and could be no ground for mistake on this point. It was quite unnecessary for the judge to repeat his charge on this point, in response to this request. It was not error to refuse to charge that " it mattered not whether the bell was rung the distance of eighty rods, if it was rung far enough from the crossing to warn passers by. The legislature has said that this " far enough to warn passers by" shall be eighty rods. The jury had no right to change the rule as thus fixed. It was the duty of the defendants to ring such bell continuously for the distance of eighty rods, as stated by the judge.

These are all the exceptions taken or particularly urged upon our attention. No error, I think, was committed at the circuit, and the motion for a new trial should be denied.

New trial denied.

[MONROE GENERAL TERM, March 1, 1869. *E. D. Smith, Johnson,* and *J. C. Smith,* Justices.]